The AETNA CASUALTY AND SURETY COMPANY, Aetna Insurance Company, American Empire Insurance Company, Commercial Union Insurance Company, Compagnies D'Assurances Du Groupe Concorde, Continental Casualty Company, Employers Mutual Liability Insurance Company of Wisconsin, Hartford Fire Insurance Company, Industrial Indemnity Company, Maryland Casualty Company, Reliance Insurance Company, Royal Indemnity Company, St. Paul Fire and Marine Insurance Company, Security Insurance Company of Hartford, the Travelers Indemnity Company, Underwriters at Lloyd's and Associated British Insurance Companies, United States Fidelity and Guaranty Company, United States Fire Insurance Company and Zurich Insurance Company, Plaintiffs,

v.

UNITED STATES of America, Bernard C. Groseclose, Alden E. Hare, William L. Hogan and Dennis L. Hunter, Defendants.

No. C–C–77–41.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Oct. 14, 1977.

James P. Crews, Golding, Crews, Meekins, Gordon & Gray, Charlotte, N. C., Wal-

ter E. Rutherford, Haight, Gardner, Poor & Havens, New York City, for plaintiffs.

Harold Edwards, U. S. Atty., Charlotte, N. C., Michael J. Pangia, Trial Atty., Aviation Unit, U. S. Dept. of Justice, Washington, D. C., for defendants.

### ORDER

McMILLAN, District Judge.

Plaintiffs brought this suit against the United States to recover as subrogees their losses allegedly exceeding $20,000,000.00 resulting from the crash of Eastern Air Lines' Flight 212 near Charlotte, North Carolina, on the 11th day of September, 1974.

The United States, through the Department of Justice, is providing a defense on behalf of the United States itself and on behalf of Bernard C. Groseclose, chief of the air traffic controllers at the Charlotte airport, and the three air traffic controllers who had duties with respect to the approach of the aircraft. These controllers are the defendants Dennis L. Hunter, the approach controller; Alden E. Hare, the local controller; and William L. Hogan, who was then and there supervising the work of Hare, a trainee in the job.

The defendant Groseclose was in overall charge of the operation of the tower and the training of air traffic controllers.

The defendant Hunter, the "approach controller," was an experienced controller whose duties included making radio contact with approaching aircraft while they were a considerable distance away from the airport and issuing instructions as needed to enable the aircraft to line up with the runway and begin to make its landing approach.

The defendant Hare, a trainee in the "local controller" position, had the duty of assuming tower communications with the aircraft when it was "handed off" by Mr. Hunter, and of giving any instructions necessary to get the aircraft lined up and keep it lined up so that it would be approaching the end of the runway going in the right direction.

The defendant Hogan was supervising the work of the trainee defendant, Hare.

None of the air traffic controllers as far as is now known had ever been given the affirmative duty to read or estimate from their radar scopes how high approaching aircraft were above the ground and to warn aircraft pilots when they were dangerously close to the ground.

The crash of the plane resulted when the pilots flew it into the ground several miles short of the runway and a considerable distance *below* the level of the runway.

Counsel for the plaintiffs have filed a motion to disqualify the Department of Justice from representing both the government and the controllers upon the theory that there is a conflict of interest between the interests of the government and that of the controllers.

I find that there is such a conflict and that adequate representation of the individual controllers can not be provided by lawyers who also have the obligation to defend the United States at large against the charges being made in the pleadings.

Each controller has an interest in avoiding personal responsibility upon any theory that the government has a duty to tell approaching airplane pilots that they are flying too close to the ground. If the plaintiffs prove their theory that the government has or assumed such a duty, each individual controller should be free to defend himself upon the basis, if the evidence justifies it, that he personally had assumed no such duty *and* had had no such duty imposed upon him. He should not be prejudiced by representation by a lawyer who has to defend the government generally against that charge.

The individual defendant Groseclose is entitled to the defense and contention that he loyally passed on to the individual controller all instructions and training required of him and that regardless of what duty might be imposed upon the government, he had not been directed by the government, and had not undertaken to carry out, the duty of telling air line pilots that they were flying too close to the ground.

The "approach controller" Hunter is entitled to be represented by counsel free to admit or contend that he had neither assumed nor been subjected to the duty of giving warnings to aircraft flying too close to the ground. He is also entitled to the contention that when he handed the plane over to the local controller, everything was A–OK and that the responsibility, if any, lay with the local controller.

The "local controller" Hare is entitled to contend that if there was fault on the part of the government it lay with his supervisor, Mr. Hogan, or with others up the line, and with the approach controller, and that the critical course of the plane had been set by others before his contact with the plane ever began.

The defendant Hogan is entitled to the contention that his supervision over the defendant Hare was flawless and that if Hare was in any way responsible, his fault was some last moment oversight rather than something which could have been prevented by training and supervision.

From the above general summaries of attitudes, among others, which competent counsel should be free to take if the facts justify, it is fully obvious that a conflict exists between the vigorous representation of the interests of each individual defendant on the one hand and a vigorous representation of the interests of the United States at large on the other.

Moreover, it is apparent that the interests of each individual defendant can not be adequately served unless counsel for each defendant is entitled to put the blame upon fellow controllers if the facts so justify.

To require one lawyer or team of lawyers to represent both the individual defendants and the government forces those attorneys into a violation of Ethical Consideration 5–15 and Disciplinary Rule 5–105(B) of the American Bar Association Code of Professional Responsibility. Ethical Consideration 5–15 provides:

"If a lawyer is requested to [represent] multiple clients having potentially different interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided . . . . He should resolve all doubts against the propriety of representation. A LAWYER SHOULD NEVER REPRESENT IN LITIGATION MULTIPLE PARTIES WITH CONFLICTING INTERESTS, AND THERE ARE FEW SITUATIONS IN WHICH HE WOULD BE JUSTIFIED IN REPRESENTING IN LITIGATION MULTIPLE CLIENTS WITH POTENTIALLY CONFLICTING INTERESTS . . . . If the interests vary only slightly, it is generally likely that the lawyer . . . can retain his independent judgment." (Emphasis added.)

DR 5–105 goes on to provide that an attorney can not represent multiple interests in litigation unless "it is obvious that [the attorney] can adequately represent the interest of each and if each consents to the representation."

Government counsel say that each of the individual defendants has been fully informed and has consented to the joint representation which is being afforded, and that this ought to solve the problem. There are two difficulties with that point of view. In the first place, the consent of an individual litigant can not be presumed to be fully informed when it is procured without the advice of a lawyer who has no conflict of interest. In the second place, even though consent has been given, DR 5–105 is not complied with because it is not "obvious that [the attorney] can adequately represent the interest" of each individual defendant.

Contrary to the government's view that there is only a remote possibility of conflict among the defendants, this court is of the opinion that an actual conflict exists.

Some suggestion was made that counsel could withdraw if an actual conflict developed in the course of the trial. Since the actual conflict is already upon us, I am not persuaded that this would be wise; moreover, this case is too bulky and involves too many people for the court to run the risk of withdrawal of counsel in mid-trial and the ensuing mistrial which would have to be allowed.

The government has made several other contentions:

(a) That the United States will pay any judgment awarded against the individuals. Unfortunately, no statute is cited and no bond has been posted to cover that contingency.

(b) That the FAA Facility Manual, page 37, requires the United States to foot the bill. The court is not satisfied that this manual binds the Treasury. Moreover, the manual itself is something less than a guaranty. It says that "even if a money judgment were obtained against an employee individually the FAA would *in a proper case* institute action seeking passage . . . by the Congress . . . for the relief of the employee." "Proper case" is not defined.

(c) That judgment against the employees is barred by 28 U.S.C. § 2676, which provides:

"The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." This statute does not help the individual defendants unless and until a judgment has been rendered against the government.

The trouble with all these contentions about the government's obligation or willingness to stand good for any loss is that the rule against representing conflicting interests is a matter of principle having to do with the integrity and effectiveness of lawyers and of the trial process; and it is not to be swept under the rug simply because the government may have a deep pocket and has attorneys who are sure that that government will "do right" if things go wrong. The conflict remains regardless of whoever pays; moreover, the taxpayers are entitled to representation by a district attorney or attorney general whose loyalty is not clouded by possible conflicting claims or rights of the controllers themselves.

It is somewhat puzzling that the question should be receiving so much attention in view of the Department of Justice's "STATEMENTS OF POLICY" in the form of Order No. 683–77 dated January 19, 1977, which in paragraph 3 reads as follows:

"The Department will likewise pay for representation by a private attorney when several employees, otherwise entitled to representation by the Department, have sufficiently conflicting interests which in the Department's view preclude representation of each of them by the Department."

Private counsel are expensive and getting more so; but the unimpeachable conduct of a case of this possible magnitude would seem to be more important both to the taxpayers and the individuals involved than the attorneys' fees which might be involved.

IT IS THEREFORE ORDERED:

1. That in the opinion of this court, the United States Attorney is, because of irreconcilable conflicts of interest, disqualified from representing the individual defendants.

2. That if this decision is not appealable as of right the court nevertheless certifies under 28 U.S.C. § 1292(b) that it involves a controlling question of law and practice as to which there may be ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation. (At the hearing I indicated an unwillingness to certify this question, but since as announced at the hearing I do not believe there should be more than one more trial on any of the issues of liability arising out of the crash of Eastern Flight 212, and since all the cases now pending were filed quite late in the game, I am not opposed to letting all plaintiffs wait for trial until this question is decided.)

3. That since the only thing involved in this appeal is the propriety of conflicting representation, no appeal from this order

shall work any postponement of pleadings or discovery or otherwise prevent orderly progress without interruption toward complete readiness for trial.